**E-Filed 9/28/2010**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| TAHEREH HOUSSAINI MATIN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>　　　　Defendant. | Case No. 5:08-CV-01722-JF<br><br>ORDER[1] (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND |

Plaintiff Tahereh Houssaini Matin ("Matin") filed this action on March 31, 2008, seeking reversal of the decision of Defendant Commissioner of Social Security Administration (the "Commissioner") to deny her request for disability insurance benefits. The parties have filed cross motions for summary judgment. The matter was submitted without oral argument.

**I. BACKGROUND**

Matin was born in Iran on September 5, 1946, and is sixty-four years old. Certified Administrative Record ("AR") at 395. She lives with her elderly mother in an apartment in San Jose, California. *Id.* at 7, 187. Matin moved to the United States in 1971 and earned her

---

[1] This disposition is not designated for publication in the official reports.

undergraduate degree in home economics and a master's degree in library science from San Jose State University. *Id.* at 396, 420.  She then went back to Iran and worked in a library. *Id.* at 396-97.  In 1988, she returned to the United States because of the ongoing war in Iran. *Id.* at 397.  Since her return, she has worked on an electronic assembly line and as a clerk at a bank. *Id.* at 177.  In 1992, Matin was diagnosed with a tumor and was fired from her job as a bank clerk because she was unable to work. *Id.* at 421.  She alleges that she is disabled as a result of a combination of impairments, including anxiety, panic attacks, depression, asthma, carpal tunnel, control radiculopathy, high blood pressure, back pain, and glaucoma. *Id.* at 162, 176.

## II. ADMINISTRATIVE PROCEEDINGS

Matin filed her first application for SSI benefits on August 11, 2004, alleging disability beginning on April 8 1997. *Id.* at 19.  The application was denied initially and upon reconsideration, and Matin thereafter requested a hearing before an administrative law judge ("ALJ"). *Id.*  The hearing was held on December 21, 2005 before the Honorable Brenton L. Rogozen. *Id.* at 392-413.  The ALJ found that Matin was not disabled as defined in the Social Security Act because she was able to perform her past relevant work. *Id.* at 89-94.  Matin requested review of the ALJ's decision and submitted new evidence that her impairments were more severe than originally determined. *Id.* at 123, 126.  The Appeals Council vacated the ALJ's decision and remanded for a new hearing, which was held on January 23, 2007. *Id.* at 19, 131, 414-452.  In light of the new evidence, the ALJ found that Matin was disabled beginning on February 16, 2006. *Id.* at 19-29.  Matin again appealed, claiming that the onset date determination was unsupported by the evidence and that the ALJ improperly had discounted the treating physician's medical opinion and her own testimony, but the Appeals Council affirmed the ALJ's decision as the "final decision of the Commissioner." *Id.* at 7, 14, 386-90.

## III. LEGAL STANDARD

### A. Standard for Reviewing the Commissioner's Decision

Under 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not

2

Case No. 5:08-CV-01722-JF
ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
(JFEX2)

supported by substantial evidence or if it is based upon an incorrect application of legal standards. *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). When determining whether substantial evidence exists to support the Commissioner's decision, courts examine the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**B. Standard for Determining Disability**

A person is "disabled" for purposes of receiving social security benefits if he or she is unable to engage in any substantial gainful activity due to a physical or mental impairment which is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least twelve months. *Drouin*, 966 F.2d at 1257; *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden of proof is on the claimant as to steps one through four. *Id*. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, the Commissioner need not consider subsequent steps. *Id*.

In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995) *as amended* April 9, 1996. If the claimant

3

is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments that significantly limit the claimant's ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. *Id.* If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments (the "Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1 (2000); if so, disability is conclusively presumed and benefits are awarded. *Id.* If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity to perform his or her past work; if so, the claimant is not disabled and the claim is denied. *Id.* The plaintiff has the burden of proving that he or she is unable to perform past relevant work. *Drouin*, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant can perform other substantial gainful work; the determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920 (2000); *Lester*, 81 F.3d at 828 n.5; *Drouin*, 966 F.2d at 1257.

### III. DISCUSSION

**A. The ALJ's Determination**

  The ALJ determined that prior to February 16, 2006, Matin "did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." AR at 21. The ALJ also found that prior to that date, Matin "was capable of performing past relevant work." *Id.* at 26. Finally, the ALJ concluded that after February 16, 2006, the severity of Matin's disorders combined to meet the requirements of 20 C.F.R. Part 404, Subpart P, Appendix. *Id.* at 27. Accordingly, the ALJ determined that Matin "was not disabled prior to February 16, 2006" but became disabled on that date and was still disabled through the date of his decision. *Id.* at 28.

4

Case No. 5:08-CV-01722-JF
ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
(JFEX2)

**B. The Parties' Positions**

Matin asserts that the ALJ's decision with respect to the onset date was not supported by substantial evidence, that the ALJ erred by failing to credit the opinion of her treating physician, and that the ALJ erred by failing to credit her testimony. She contends that the record supports only one finding—a finding of disability with an onset date of September 2004[2]—and requests summary judgment in her favor or remand to the ALJ for reconsideration. The Commissioner disagrees and also moves for summary judgment.

**C. This Court's Determination**

**1. Whether the ALJ's Decision with Respect to Onset Date Was Supported by Substantial Evidence**

Social Security Ruling 83-20 sets forth guidelines for determining disability onset dates. *Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008). SSR 83-20 provides that judgment with respect to disability onset date "must have a legitimate medical basis." *Id.* (citing SSR 83-20). Nonetheless, if "medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991).

Here, the ALJ found that the evidence did not support a finding of disability before February 16, 2006. AR at 22. In his written opinion, the ALJ first addressed the testimony of Dr. Anderson.[3] *Id.* The ALJ noted that the Listing requires evaluations containing evidence from relevant sources over a sufficiently long period of time to establish the baseline severity and limiting effect of any mental impairments, because such conditions can vary over time. *Id.* The

---

[2] Supplemental security income is not payable prior to the month following the month in which the application was filed. 20 CFR § 416.335 (2009). The application was filed in August 2004. Therefore, SSI is not payable prior to September 2004.

[3] Dr. Anderson testified as a medical expert at the hearing before the ALJ on January 23, 2007.

5

ALJ acknowledged that Dr. Anderson initially had testified that Matin's impairments met or equaled an impairment in the Listing in September 2004. *Id.*; *see also id.* at 443-47. However, Dr. Anderson later conceded that it was difficult to pinpoint exactly when the impairments reached the necessary level of severity and that his determination was based on inferences he was drawing from the medical records. *Id.* at 22, 445.

Dr. Anderson stated that in reaching his conclusion he relied heavily on Dr. Mann's psychiatric evaluation conducted in October 1998 and gave little weight to Dr. Kollath's evaluation conducted in November 2004. *Id.* at 445; *see also id.* at 265-72. Dr. Anderson stated that he discredited Dr. Kollath's diagnosis because Dr. Kollath did not perform any psychological tests. *Id.* at 446. The ALJ pointed out that Dr. Mann did not conduct such tests either, *id.*, and questioned Dr. Mann's objectivity in light of the fact that Matin had been referred to Dr. Mann by a SSI Advocacy Caseworker, *id.* at 22. The ALJ also observed that Dr. Mann's "diagnosis and conclusions were based substantially on [Matin's] subjective statements," which the ALJ did not find credible. *Id.* at 22. In addition, the ALJ noted that Dr. Mann's opinion a few months later indicated "no more than mild-to-moderate impairment." *Id.*; *see also id.* at 262. Finally, the ALJ deemed Dr. Mann's opinion irrelevant given that it was obtained in 1998. *Id.* at 22.

The ALJ remarked fact that Matin did not complain of severe symptoms or limitations and that prior to February 16, 2006, she reported significant daily activities inconsistent with her disabling symptoms. *Id.* at 26. He also noted that Matin did not receive regular mental heath care treatment, and that there was no medical evidence of a severe mental or exertional limitation prior to 2006. *Id.*

Other evidence in the record supports the ALJ's conclusion that Matin was not severely impaired prior to February 16, 2006. For example, in November 2004, Dr. Kollath concluded that Matin was psychologically stable, that her "concentration, persistence and pace [were] not significantly impaired," and that she had the "capacity to manage supplement funds."[4] *Id.* at 272.

---

[4]Dr. Kollath issued a Complete Psychiatric Evaluation report on November 10, 2004.

6

Dr. Gable's report from November 2004 indicated that Matin could sit or stand for six hours a day with usual breaks and that she could lift twenty pounds frequently or forty pounds occasionally.[5] *Id.* at 275.  Dr. Mitchell's report from December 2004 confirmed that Matin could sit or stand for six hours, but stipulated that she could lift only ten pounds frequently and twenty pounds occasionally.[6] *Id.* at 278.  Dr. Mitchell also noted no postural, manipulative, visual, communicative or environmental limitations.  *Id.* at 279-81.

The ALJ explained that he accorded little weight to Dr. Anderson's opinion because it hinged on two unproven assumptions: (1) that Matin experienced the same symptoms in 1998 that she did in 2004; and (2) that her condition had been worsening at a fairly consistent rate.  *Id.* at 26.  The ALJ further discredited Anderson's opinion because it indicated that Matin's most limiting impairment was post-traumatic stress disorder ("PTSD") and acknowledged that Matin was not diagnosed with PTSD until February 2006.  *Id.*  The ALJ also found that the opinions of Drs. Kollath and Gable were entitled to more weight than those of Drs. Mann, De Bruyne and Anderson because Drs. Kollath and Gable conducted the most thoroughly reported examinations and did not give undue weight to Matin's "unsubstantiated subjective complaints."  *Id.*

Matin argues that under SSR 83-20, the ALJ was required to credit the testimony of Dr. Anderson with respect to her onset date.  Mot. Summ. J. (Docket No. 24) at 4.  She also claims that the ALJ's determination of an onset date of February 16, 2006 was not only contrary to Dr. Anderson's testimony but also contrary to the medical evidence and unsupported by substantial evidence.  *Id.* at 5.

Although SSR 83-20 requires the ALJ to call on a medical advisor when inferences must be made, the ultimate determination whether such assistance is necessary is left to the ALJ.  *DeLorme*, 924 F.2d at 848.  The ALJ's decision in this case is supported by substantial other

---

[5] Dr. Gable issued his Internal Medicine Report on November 16, 2004.

[6] Dr. Mitchell issued his Physical Residual Functional Capacity Assessment on December 14, 2004.

Case No. 5:08-CV-01722-JF
ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
(JFEX2)

medical evidence. As indicated above, where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin*, 966 F.2d at 1258.

### 2. Whether the ALJ Erred in Discrediting Dr. De Bruyne's Opinion About Matin's Symptoms and Limitations

Matin next contends that the ALJ misapplied the law and improperly rejected Dr. De Bruyne's opinion. It is true that greater weight usually is given to the opinion of a treating physician. *Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). However, when evidence in the record contradicts a treating physician's opinion, the ALJ may discredit that opinion so long as he provides "specific and legitimate" reasons. *Lester*, 81 F.3d at 830-31. Further, " '[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.' " *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).

Dr. De Bruyne completed forms on June 3, 2004 and December 9, 2004 indicating that Matin was disabled from work as a result of "asthma, depression, control radiculopathy, carpal tunnel syndrome," and an inability to lift, bend or perform repetitive hand motions. *Id.* at 285-86. Dr. De Bruyne noted that these conditions were likely to last more than twelve months. *Id.* at 285-86. Dr. De Bruyne also completed a Physical Residual Functional Capacity Questionnaire on May 5, 2005 evaluating Matin's condition, symptoms and capabilities. The questionnaire stated that Matin would be capable of performing only low stress jobs; could walk, sit and stand only for limited periods of time during a work day; would need regular breaks of up to an hour during the course of a work day; probably would have to skip up to four days of work a month; would have significant reaching, handling, lifting, and moving limitations; and would have frequent disruptions of her work performance as a result of her symptoms. *Id.* at 300-05.

The ALJ discredited Dr. De Bruyne's opinion because he deemed it to be purely

8

conclusory, finding that there was no evidence in the doctor's records of diagnostic tests or detailed examinations that would support the diagnosis or limitations imposed. *Id.* at 25. Consequently, the ALJ was "forced to conclude that Dr. De Bruyne relied substantially on the [Matin's] subjective complaints, which [he found were] not generally credible." *Id.* at 26.

The ALJ also found that Dr. De Bruyne's opinion was unsupported by the other clinical findings or by the record as a whole. For example, as noted above, Dr. Gable indicated that Matin could sit or stand for six hours a day with usual breaks and that she could lift twenty pounds frequently or forty pounds occasionally and Dr. Mitchell opined that she could sit or stand for six hours in an eight hour work day and lift ten pounds frequently and twenty pounds occasionally. *Id.* at 275, 278. In addition to these medical opinions suggesting that Matin was capable of a full range of light exertional work, the ALJ relied on other evidence to support his finding, such as the fact that Matin had received only routine and conservative treatment and reported significant daily activities fundamentally inconsistent with disabling symptoms. *Id.* at 26.

The ALJ supported his decision with "specific and legitimate" reasons as required by the applicable legal standard. The ALJ expressly found Dr. De Bruyne's opinion to be brief, conclusory, and inadequately supported by clinical findings. Accordingly, the ALJ did not err in discrediting the opinion.

### 3. Whether the ALJ Erred in Discrediting Matin's Own Testimony About Her Symptoms and Limitations With Respect to the Period Prior to February 16, 2006

Matin claims that the ALJ erred by discrediting her own testimony with respect to her symptoms and limitations. The ALJ's assessment of a claimant's credibility must be "properly supported by the record" and "sufficiently specific" to assure the reviewing court that the ALJ "rejected the . . . testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1995) (quoting *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1213-14 (11th Cir. 1991) (quotations omitted)). If there is no evidence of malingering, an ALJ may not discount a claimant's testimony without

9

Case No. 5:08-CV-01722-JF
ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
(JFEX2)

clear and convincing reasons. *Regennitter v. Commissioner*, 166 F.3d 1294, 1296 (9th Cir. 1999). In reaching this determination, the ALJ may "weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record." *Bray*, 554 F.3d at 1226-27 (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)). This Court must affirm the ALJ's assessment of Matin's credibility if it is supported by substantial evidence in the record and the correct legal standard was applied. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (citing *Reddick v. Chafer*, 157 F.3d 715, 720 (9th Cir. 1998)).

The ALJ found that Matin's statements with respect to "the intensity, duration, and limiting effect of her symptoms" were not credible with respect to the period prior to February 16, 2006. AR at 23. In reaching this conclusion, the ALJ relied on statements made by Matin to doctors that were inconsistent with her testimony; conflicting opinions of examining and nonexamining physicians; absence of normal clinical signs; absence of regular contact with physicians or attempts to obtain treatment and relief; presence of significant daily activities inconsistent with claimed disabling symptoms; and inconsistency between complaints in benefit application paperwork and statements made to her physician and during testimony at the hearing. *Id.* at 23-24.

For example, Dr. Gable reported that based on his examination on November 16, 2004, Matin could sit, stand and walk for up to six hours, and lift, push or pull twenty pounds frequently and forty pounds on occasion. *Id.* at 275. Dr. De Bruyne completed a form on May 5, 2005, indicating that Matin should not sit for longer than four hours in a day or stand or walk for no longer than two hours in a day and that she could lift only ten pounds on rare occasions. *Id.* at 300-05. Contrary to both of these medical opinions, Matin testified that she could walk for only five minutes at a time and could lift only five pounds. *Id.* at 428-36. As a further example, Dr. Gable noted in his report that Matin told him she had carpal tunnel even though her symptoms were not compatible with the syndrome. *Id.* at 273. Matin also testified that she needed a cane to walk, yet even Dr. De Bruyne opined that a cane was unnecessary. *Id.* at 303, 437. The ALJ observed that Matin claims that she cannot lift more than five pounds and needs a cane to walk

10

were inconsistent with her testimony that she drives, cooks, cleans, shops and does laundry for herself and her mother. *Id.* at 191, 428, 434, 439. Finally, although Matin claimed that she was disabled in 1995, she admitted she had looked for work in 2001. *Id.* at 425. As a result of these inconsistencies, the ALJ determined that Matin's statements were credible only as they applied to the period beginning February 16, 2006 because her statements with respect to the claimed disability prior to that date were not corroborated by medical evidence. *Id.* at 23.

Matin argues that the ALJ erred in failing to address lay evidence in the form of a questionnaire completed by her sister. Mot. Summ. J. (Docket No. 24) at 7 (citing AR 195-203). She asserts that the sister's statements corroborate her own statements and testimony. *Id.* However, the sister's questionnaire itself conflicts with medical evidence in the record, such as the reports of Drs. Gable and Kollath. When the evidence in the record as a whole can support two rationale outcomes, the reviewing court must defer to the judgment of the ALJ. *See Bray*, 554 F.3d at 1222. The ALJ rejected Matin's testimony on permissible grounds that were not arbitrary and were supported by substantial evidence.

## IV. CONCLUSION

Pursuant to the foregoing discussion, Defendant's motion for summary judgment is GRANTED, and Plaintiff's motion for summary judgment or, in the alternative, remand, is DENIED.

IT IS SO ORDERED.

DATED: 9/28/2010

_____
JEREMY FOGEL
United States District Judge

11

Case No. 5:08-CV-01722-JF
ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
(JFEX2)